Filed 11/12/20  In re H.V. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re H.V., a Person Coming Under the Juvenile Court Law. | D077671 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J520303) |
| v. | |
| K.V., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Rohanee Zapanta, Judge.  Affirmed.

Elena S. Min, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, Caitlin E. Rae, Chief Deputy Counsel, and Jesica N. Fellman, Deputy County Counsel, for Plaintiff and Respondent.

K.V. (Father) appeals from juvenile court orders declaring his son, H.V., a dependent pursuant to Welfare and Institutions Code[1] section 300, subdivision (b), and removing him from Father's care. He contends that the evidence did not support the juvenile court's findings regarding jurisdiction or disposition. We disagree and affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

*Father's Background*

Father's criminal history includes arrests in 2001, 2008, and 2012 for disorderly conduct while intoxicated, and arrests in 2004 and 2006 for driving under the influence (DUI), with the 2004 arrest resulting in a conviction. In 2017, Father and mother B.F. (Mother) started dating and Mother became pregnant. In March 2018, Father was again arrested for DUI. Father was placed on probation with an ankle monitor. In April 2018, Mother gave birth to H.V. The parents ended their relationship in November 2018.

In early February 2020[2], the Agency received a referral expressing concern for H.V. after Mother and H.V. were involved in a car accident while Mother drove intoxicated. Mother's blood alcohol level was .40 and she suffered multiple injuries. H.V. was unharmed and released to the maternal grandmother. The following day, Mother told a social worker that in 2005 she completed an alcohol treatment program and was sober for 10 years, but relapsed about a year and a half before the accident.

In late February, the family court granted Father ex parte temporary full custody of H.V. After being released from the hospital, Mother sought H.V.'s whereabouts and requested a welfare check, but law enforcement was

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Undesignated year references are to 2020.

unable to locate Father at his last known address.  On March 4, Father was arrested at his probation meeting for, among other things, not promptly updating his address, which violated the terms of his probation.  The San Diego County Health and Human Services Agency (Agency) detained H.V. at Polinsky Children's Center.

*Current Dependency Proceedings*

On March 6, the Agency filed a petition alleging H.V. fell within section 300, subdivision (b) due to Mother's alcohol use and Father's incarceration and alcohol related criminal history.  At the detention hearing, the juvenile court found Father to be the presumed father of H.V. under Family Code section 7573.  It also made a prima facie finding on the petition, detained H.V. in out-of-home care, and ordered voluntary services and that the parents participate in supervised visitation.  At the hearing, Father's counsel represented that Father has been sober for over two years.  Because Father had recently obtained temporary custody of H.V., the juvenile court made the removal findings from Father's care.  H.V. was later placed in the home of the maternal grandmother.

On June 16, Father was released from jail.  During his incarceration he was unable to visit H.V. and the maternal grandmother reported no contact from him by phone.  On June 19, the social worker spoke with Father's probation officer who indicated they almost arrested Father the previous day because he had driven to the probation office with a suspended license.  According to the probation officer, Father was homeless and living in his truck.  If Father violated probation again he would serve six years in prison.

At the June 23 contested jurisdictional and dispositional hearing, the court admitted into evidence the Agency reports.  The parties had no questions for the social worker and presented no affirmative evidence.  After

hearing argument, the juvenile court made a true finding on the petition by clear and convincing evidence. The court explained that while Mother was engaged in treatment, it was too early for the court to conclude that H.V. was no longer at substantial risk of serious physical harm or illness due to Mother's alcohol abuse.

With respect to Father, the juvenile court was mindful of how his incarceration affected his ability to work with the Agency. Citing Father's recent release from incarceration, his active probation and restraining orders, the juvenile court determined it had insufficient evidence to demonstrate H.V. would not be at risk in Father's care.[3] The court explained, "So it's just too early to tell for me to have any evidence of safety and risk assessment that can offset what already has been established based on just the circumstances surrounding the petition."

The juvenile court adopted the Agency's dispositional recommendations, removed H.V. from the parents' custody, placed him in the maternal grandmother's home, and ordered reunification services. The court entered a no contact order between the parents, as well as between Father and maternal grandmother, and set six- and 12-month review hearing dates. Father timely appealed.

DISCUSSION

1. *General Legal Principles*

A parent may seek review of both the jurisdictional and dispositional findings on an appeal from the disposition order. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249.) We review the juvenile court's jurisdictional and dispositional orders for substantial evidence. (*In re I.J.*

---

[3] Father had an active restraining order protecting the paternal grandmother.

4

(2013) 56 Cal.4th 766, 773 (*I.J.*).)  The burden of proof for jurisdictional findings is preponderance of the evidence; for removal, it is clear and convincing evidence.  (*Cynthia D.*, at p. 248.)

In applying the substantial evidence standard of review, " ' "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.]  "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' " (*I.J.*, *supra*, 56 Cal.4th at p. 773.)

2.  *Substantial Evidence Supports the Jurisdictional Findings under Section 300(b)(1)*

To establish jurisdiction under section 300, subdivision (b)(1), the Agency must show:  "(1) neglectful conduct, failure, or inability by the parent; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.)  The third element requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future.  (*In re Jesus M.* (2015) 235 Cal.App.4th 104, 111.)  Standing alone, past conduct is insufficient to establish a substantial risk of harm and "there must be some reason beyond mere speculation to believe [the past conduct] will reoccur." (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564-565.)

The court, however, " 'need not wait until a child is seriously abused or injured to assume jurisdiction' " and "[a] parent's past conduct is a good predictor of future behavior." (*In re. T.V.* (2013) 217 Cal.App.4th 126, 133 (*T.V.*).)  " 'Facts supporting allegations that a child is one described by section

300 are cumulative.' [Citation.] Thus, the court 'must consider all the circumstances affecting the child, wherever they occur.' " (*Ibid.*) On appeal, the parent has the burden of showing that there is insufficient evidence to support the juvenile court's jurisdictional findings. (*Ibid.*)

As a threshold matter, the Agency contends that Father's appeal is nonjusticiable because Father does not challenge the jurisdictional findings regarding Mother's conduct and, therefore, any decision we might render would not deprive the juvenile court of its authority to assert jurisdiction over H.V.

The record shows that the juvenile court sustained the petition with respect to Mother. Accordingly, if we reverse the jurisdictional findings as to Father, the unchallenged findings as to Mother will continue to support dependency jurisdiction. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [where a dependency petition alleges jurisdiction based on multiple grounds, the reviewing court may affirm the jurisdictional order if any one of the petition's enumerated bases for jurisdiction is supported by substantial evidence]; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 [affirming jurisdictional order pertaining to father based on unchallenged findings concerning mother].) Nevertheless, we retain jurisdiction to consider Father's appeal and do so where, as here, it impacts dispositional orders that are also challenged on appeal. (*In re M.W.* (2015) 238 Cal.App.4th 1444, 1452; *In re Drake M.* (2012) 211 Cal.App.4th 754, 763.)

The petition alleged that Father's incarceration and alcohol related criminal history created a substantial risk of serious physical harm to H.V. Father asserts that substantial evidence does not support the juvenile court's jurisdictional finding because H.V. never suffered any harm under his care and the record does not show a current risk of harm to H.V. due to his alcohol

6

use. Father contends that he does not have an ongoing substance abuse issue, that his alleged substance abuse does not place H.V. at substantial risk for serious harm, and that he acted promptly and appropriately to protect H.V. after Mother's accident. Father notes that the juvenile court did not order substance abuse treatment based on the lack of evidence that he suffered an alcohol problem.

The Agency does not argue that H.V. suffered any physical harm due to Father's alcohol use, and the record contains no evidence to support such a finding. Accordingly, we consider whether the record contains sufficient evidence showing a substantial risk of serious physical harm in the future. We conclude that ample evidence supports the juvenile court's finding that Father's untreated alcohol issues endangered H.V.'s physical health and safety and placed him at risk of serious physical harm.

For a child of "tender years," such as H.V., a finding of substance abuse is prima facie evidence of the inability of a parent to provide regular care, resulting in a substantial risk of physical harm. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1220.) This relationship between substance abuse and resulting substantial risk of physical harm rests on the reasonable proposition that children young enough to need constant supervision face an " 'inherent' " and substantial risk of serious physical harm if their caregiving parent is engaged in activity that renders the parent less capable of providing the requisite supervision. (*Id.* at p. 1216.)

Father was arrested for driving while intoxicated in 2004, 2006, and 2018. After his 2018 arrest, Father tested positive for alcohol in June 2019 and received an ankle monitor. His probation officer reported that Father was "non-compliant with the device[,] as he had tampered" with it several times, and it was removed in December 2019. The paternal grandmother

described Father as " 'an alcoholic' " who " 'cannot have just one drink.' " She stated that she and her husband had arranged for Father to participate in treatment in the past and that he had been to treatment once or twice. She noted that after his DUI arrests, Father was required to take classes but "that still did not stop him [from drinking]."

While the paternal grandmother believed Father loved H.V. very much, she expressed concern about him possibly fleeing the state and caring for H.V. while intoxicated. Mother also expressed concern that Father had not properly supervised H.V. in the past, stating that H.V. had a severe diaper rash after visiting Father and that she had to take H.V. twice to the doctor for treatment.

Father was released from jail on June 16, a mere week before the contested jurisdictional and dispositional hearing. In taking jurisdiction over H.V., the juvenile court noted that it did not "have enough evidence to offset the risk that the petition created with Father's probation violation." We agree. The above facts belie Father's assertion that he does not have a history of ongoing substance abuse. Rather, the record shows that Father has had alcohol related issues for at least 14 years. Significantly, "denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision." (*In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044.)

While we acknowledge there is no evidence showing Father has consumed alcohol since March 2019, " '[t]he purpose of dependency proceedings is to prevent risk, not ignore it.' "[4] (*Jonathan L. v. Superior*

---

[4]     Although the juvenile court did not require that Father enroll in a substance abuse program, it ordered that Father be tested for alcohol use. Accordingly, despite Father's recent sobriety, the juvenile court impliedly recognized that relapse is common with long-term alcohol use.

*Court* (2008) 165 Cal.App.4th 1074, 1104.) The record, viewed most favorably to the juvenile court's order, establishes that Father's history of alcohol abuse and past refusal to participate in alcohol treatment presents a substantial danger to H.V.'s physical safety. Accordingly, the juvenile court appropriately assumed jurisdiction over H.V. under section 300, subdivision (b)(1).

3. *Substantial Evidence Supports the Dispositional Findings and Removal Order*

Before the juvenile court may order a child physically removed from his or her parent's custody, it must find, by clear and convincing evidence that: (1) a substantial danger exists to the well-being of the minor if the minor were returned home, and (2) there are no reasonable means to protect the minor's physical health without removing the minor from the parent's physical custody. (§ 361, subd. (c)(1).) The jurisdictional findings are prima facie evidence on the first issue. (*Ibid.*) As to the second issue, the juvenile court must also determine "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home" and "shall state the facts on which the decision to remove the minor is based." (*Id.*, subd. (e).)

To aid the court in determining whether the efforts were adequate, the petitioner is required to submit a social study which "must include" among other things, "[a] discussion of the reasonable efforts made to prevent or eliminate removal[.]" (Cal. Rules of Court, rule 5.690(a)(1)(B)(i).) We examine the record to determine whether a reasonable trier of fact could have regarded the evidence establishing the section 361 requirements as satisfying the clear and convincing standard of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1009.) A "parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting

9

harm to the child." (*T.V.*, *supra*, 217 Cal.App.4th at pp. 135-136.)  When deciding whether to remove a child, "the court may consider the parent's past conduct as well as present circumstances." (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.)

Father contends there is no evidence that H.V. suffered neglect or abuse while in his full-time care before the Agency detained H.V. and that the record does not support the finding that H.V. faced substantial danger by remaining in his care.  He also contends that substantial evidence fails to support that no reasonable means existed to protect H.V. without removal.

The record contains substantial evidence from which the juvenile court could have found it highly probable that a substantial danger to H.V.'s well-being existed if he were returned to Father's custody.  As noted *ante*, Father's alcohol use has negatively affected his life since at least 2004.  During the initial investigation and before his March 4 arrest, Father was uncooperative and refused to meet with a social worker.  After his arrest, Father again refused to speak to a social worker and did not respond to three separate e-mails asking him to call the Agency collect, or an e-mail from a protective services worker.  When Father finally contacted the Agency, he was more concerned about his lost backpack than his son.  When a social worker was finally able to speak to Father on May 22 to do a social history interview, Father changed the subject to his lost property and ultimately declined an interview.  Although Father had a calling card, he never contacted the maternal grandmother to inquire about his son.

After his release from custody about a week prior to trial, there is nothing in the record showing he contacted the Agency to discuss his case, request referrals, or check on H.V.  Father's probation officer reported that Father was living in his truck and had supplied three false addresses since being on

probation.  Notably, at the detention hearing, the juvenile court informed the parents about their need to build a record:

> "Every day needs to be an investment at collecting evidence to support your positions.  [¶]  Evidence is in the form of two things in this courtroom.  It is behavior and actions and documentation.  All right?  So we want to make sure there is cooperation, there is professionalism, and there is active contact with the agency to coordinate services.  They are going to be voluntarily [*sic*] at this point, but if can you get that started, you're not wasting any time because that six months will come and go fairly quickly.
>
> "So we're going to go ahead and note that.  Also you know the evidence takes time to build, so it doesn't happen overnight.  I can't make decisions without evidence.  So be mindful that you want to build that.  The sooner you can build some, the more evidence you have to support your position."

At that time of the dispositional hearing, however, the juvenile court had no evidence showing that Father would remain sober and law abiding.  Although the record reflects that Father cared for H.V. from February 20 to March 4 without apparent incident, the court had no evidence regarding Father's current circumstances, other than he had just been released from jail and was living in his truck.  Based on Father's past conduct, particularly his three prior DUI arrests, the record supported the juvenile court's conclusion that substantial danger existed to H.V.'s well-being if he were returned to Father.

The record also demonstrates that no reasonable alternative to removing H.V. from Father's custody existed.  (§ 361, subd. (c)(1).)  Although the juvenile court failed to articulate on the record what reasonable alternatives to removal were considered, on this record, the error was harmless and not grounds for reversal.  (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1078-1079.)  The detention report included a section entitled "Reasonable Efforts and/or Prior

11

Intervention/Services Offered." Among other things, this section noted that Father "was uncooperative with the Agency and any services we tried to give him." Father's evasiveness continued throughout these proceedings, whether or not incarcerated. This record contains substantial evidence from which a reasonable fact finder could have found it highly probable that placement of H.V. in Father's custody would pose a substantial risk of serious harm to H.V., and that there were no reasonable means of protecting H.V. without removing him from Father's physical custody.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.


BENKE, Acting P. J.

WE CONCUR:


AARON, J.


DATO, J.


12